UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WALTER SKIPPER | CIVIL ACTION |
| VERSUS | NO. 18-6164 |
| A&M DOCKSIDE REPAIR, INC., ET AL. | SECTION "R" (4) |

### ORDER AND REASONS

Before the Court is A&M Dockside Repair, Inc.'s and Helix Resources, LLC's joint motion for partial summary judgment.[1] Because A&M was Skipper's borrowing employer for the purposes of the LHWCA, the Court grants the motion.

### I. BACKGROUND

This case arises out of a workplace accident. At the time of the accident, plaintiff Walter Skipper was employed by third-party defendant Helix Resources, LLC, as a painter and blaster.[2] On August 11, 2017, plaintiff was working on a barge in a shipyard that is owned and operated by

---

[1] R. Doc. 48.
[2] R. Doc. 15 at 2 ¶ 5.

defendant A&M Dockside Repair, Inc.[3] In the course of performing his duties, plaintiff allegedly fell into an open manhole cover on the barge and suffered severe injuries.[4]

On June 22, 2018, Skipper filed a complaint alleging negligence against A&M and Cashman Equipment Corporation, a party that owned the barge and has since been dismissed from the case.[5] On January 17, 2019, the Court granted A&M's motion for leave to file a third-party complaint against Helix.[6] A&M and Helix have now filed a joint motion for partial summary judgment on the basis that Skipper was a borrowed servant of Helix, that A&M was acting as Skipper's borrowing employer, and that therefore compensation and medical payments are Skipper's sole remedy under the Longshore & Harbor Workers' Compensation Act.[7]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v.*

---

[3] *Id.*
[4] *Id.*
[5] *See* R. Doc. 1; *see also* R. Doc. 23.
[6] R. Doc. 25.
[7] R. Doc. 48-1.

*Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp.

3

948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III. DISCUSSION

A&M and Helix argue for partial summary judgment under the Longshore & Harbor Workers' Compensation Act. The LHWCA limits the remedy of a longshoreman or harbor worker against his employer to compensation and medical benefits. *See* 33 U.S.C. § 933(i) ("The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured . . . by the negligence or wrong doing of any other person . . . in the same employ."). It is undisputed that Skipper is a longshoreman or harbor worker and is thus covered by the LHWCA. A&M and Helix argue that Skipper was the "borrowed servant" of Helix, that A&M was borrowing plaintiff, and therefore Skipper's remedies are limited by the LHWCA. *See Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977) (analyzing the borrowed servant defense in the context of the LHWCA).

Skipper opposes the motion for partial summary judgment on two grounds. First, Skipper argues that the borrowed servant defense has been waived, because it was not properly asserted in A&M's answer. Second, Skipper argues that genuine issues of fact remain that preclude a grant of summary judgment. The Court addresses each argument in turn.

## A. Waiver

Skipper argues that defendants' motion for partial summary judgment must be denied because both A&M and Helix failed to raise it as an affirmative defense in their answers. Affirmative defenses are pleadings governed by Rule 8 of the Federal Rules of Civil Procedure. A defendant is required to "state in short and plain terms its defenses to each claim asserted against it" and "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(b)(1)(A), 8(c)(1). In *Woodfield v. Bowman*, 193 F.3d 354 (5th Cir. 1999), the Fifth Circuit held that affirmative defenses are subject to the same pleading requirements as a complaint and articulated a "fair notice" standard for pleading affirmative defenses. *Id.* at 362. Under this standard, a defendant is required to plead an affirmative defense "with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Id.* (citation omitted). Failure to adequately plead an affirmative defense can result in a waiver of the defense. *Rogers v. McDorman*, 521 F.3d 385 (5th Cir. 2008).

But failure to strictly comply with Rule 8(c) does not always result in waiver. The purpose of the rule "is to give the opposing party notice of the affirmative defense and a chance to argue why it should not apply." *Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009) (citation omitted). Therefore,

6

"an affirmative defense is not waived if the defendant 'raised the issue at a pragmatically sufficient time and [plaintiff] was not prejudiced in its ability to respond.'" *Id.* at 577 (quoting *Allied Chem Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)). The Court does "not take a formalistic approach to determine whether an affirmative defense was waived." *Id.* Rather, it "look[s] at the overall context of the litigation" to determine whether "evidence of prejudice exists and sufficient time to respond to the defense remains before trial." *Id.* Indeed, the Fifth Circuit has "repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later." *Motion Med. Tech., LLC v. Thermotek, Inc.*, 875 F.3d 765, 772 (5th Cir. 2017).

It is therefore necessary to determine whether defendants raised the defense "at a sufficiently pragmatic time," and whether plaintiff was prejudiced in his ability to respond. *Motion Med. Tech.*, 875 F.3d at 771. Here, Skipper first had reasonable notice the borrowed servant defense may be asserted months ago, when Helix appeared in the suit. Indeed, in its answer to A&M's third-party complaint, which is part of the record of this case, Helix asserts that "Mr. Skipper was on a mission for his employer and performing employment-related activities"[8] and that because Helix was

---

[8] R. Doc. 29 at 9.

Skipper's employer, Skipper has "no right to seek tort remedies from Helix, nor any other party to attempt to pass through alleged fault to Helix."[9] Helix also alleged that Skipper's "sole remedy against it is for compensation under the Louisiana Worker's Compensation Act or, alternatively, under the Longshoremen's and Harbor Workers' Compensation Act."[10] Although Helix does not incant the words "borrowed servant defense" these allegations offer reasonable notice to Skipper that the defense would be asserted in this case. Given that Helix's answer was submitted in February, plaintiff had reasonable notice, and the defense was raised in a sufficiently pragmatic time.

Skipper is not prejudiced by the Court's consideration of the borrowed servant defense at this juncture. Plaintiff provides fulsome, reasoned responses to defendants' arguments in his opposition.[11] Skipper even cites to various exhibits, including deposition testimony, in his response.[12] And although plaintiff asserts that there still exist genuine issues of fact, he argues these are issues the trier of fact must decide—not that additional discovery is required to resolve the issues. Indeed, Skipper does not request additional

---

9  *Id.*
10 *Id.*
11 *See* R. Doc. 51.
12 *See* R. Doc. 51 at 4.

time for discovery or suggest that additional discovery would cure any prejudice he may face.

Because Skipper had adequate notice that the borrowed servant defense would be asserted and is not prejudiced in responding to the defendants' motion for partial summary judgment, the Court finds that defendants did not waive the borrowed servant defense.

## B. Genuine Issues of Fact

Skipper also avers that the motion for partial summary judgment must be denied because issues of material fact still exist with respect to whether A&M was acting as Skipper's borrowing employer. The Fifth Circuit has held that "in absence of substantial evidence to the contrary . . . the issue of whether a relationship of borrowed servant exist[s] is a matter of law." *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 341 (5th Cir. 1969). Here, the relevant facts are not in dispute. Rather, plaintiff disputes the legal conclusion that should be drawn from the facts. This is a question of law for the Court.

Courts have developed a nine factor test to determine whether borrowed servant status exists. The nine factors are:

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
>
> (2) Whose work is being performed?

9

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977). "No single factor, or combination of them, is determinative." *Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 676 (5th Cir. 1993). Although in the *respondeat superior* context, the first factor—control—is often emphasized, in the tort immunity context, the Fifth Circuit has focused on the fourth, fifth, sixth, and seventh factors. *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 n.12 (5th Cir. 1988) (citing *Gaudet*, 562 F.2d at 356-57). This is because "these factors deal with the question of whether the circumstances of the employee's employment are such that the defendant 'should be considered an employer and not a third party under the LHWCA.'" *Id.* (citing *Gaudet*, 562 F.2d at 357).

1. *Control*

The first inquiry is control. The evidence establishes that A&M, as a borrowing employer, exerted significantly greater control over Skipper than did his nominal employer, Helix. Brian Mayon, the yard superintendent at A&M, testified that Mr. Skipper's only supervisors on the barge where he worked and was injured were A&M foremen, and that they were "in charge of all of [Helix's] workers."[13] He also testified that he was to direct Mr. Skipper's work.[14] Skipper similarly testified that A&M Dockside was "the boss"[15] and that Helix employees "were just laborers."[16] Skipper testified that A&M dockside had responsibility for him and his co-workers,[17] and he refers to Mayon as "boss man."[18] This testimony from both plaintiff and the yard foreman strongly indicates that A&M exercised control over Skipper and directed his work, not Helix.

Skipper argues that genuine issues of material fact exist as to control that would preclude summary judgment. In particular, he argues that Skipper and the foreman were equals and that Skipper was not subordinate

---

[13] Motion for Partial Summary Judgment Exhibit 2 at 45:13-17.
[14] *Id.* at 45:18-46:1.
[15] Motion for Partial Summary Judgment Exhibit 4 at 89:5-10.
[16] *Id.* at 89:13.
[17] *Id.* at 90:16-19.
[18] *Id.* at 94:20-22.

11

to Mayon or to A&M employees. This argument is plainly refuted by the evidence discussed above. Plaintiff cites to a separate portion of Skipper's deposition to support his argument. But the deposition testimony Skipper cites in no way indicates that Skipper was not subordinate to Mayon. Mayon stated that Skipper "seemed very familiar with the oilfield" and "worked with the oilfield his whole life."[19] This does not suggest that Skipper and Mayon were equals, or that Mayon was not directing Skipper's actions. Indeed, immediately after that statement, Mayon listed directions he gave Skipper, stating: "I told him he was going with the other hands we had and a couple of guys from my crew [to] clean tanks. He asked how they were cleaning them. I told him we had some big vacuum systems . . . I showed him who he was going to be working with . . . ."[20] Accordingly, the Court finds that the "control" factor favors a finding of borrowed servant status.

    2. *Whose Work?*

The second factor—whose work was being performed—also weighs in favor of borrowed servant status. Mayon testified that Skipper's work was to do the repairing and cleaning of the barge for A&M.[21] Skipper does not contest these facts. Rather, Skipper argues that as a hired laborer, he was

---

[19]     Opposition Exhibit 1 at 22:4-6.
[20]     *Id.* at 22:6-14.
[21]     Motion for Partial Summary Judgment Exhibit 2 at 45:21-46:21.

12

truly doing the work of Helix, whose business is hiring out laborers. He therefore argues he was only *incidentally* doing the work of A&M.

Skipper's argument is without merit. That Helix's business is hiring out labors does not negate that Skipper was doing A&M's work at the time of his injury. Skipper cites two cases in support of his argument. He first cites to language from *Rollans v. Unocal Exploration Corp.*, No. 93-431, 1993 WL 455731 (E.D. La. Nov. 4, 1993).[22] In that case, a cook who worked for a company that supplied food services was hired to cook for the crew on an offshore drilling platform, and he was injured after slipping on bacon grease. *Id.* at *1. There, the court found that the cook was performing the work of the catering company, not the oil platform. *Id.* at *2. But the court in *Rollans* emphasized that the plaintiff was supervised by someone from the catering company and did not answer to any of the defendant's personnel. *Id.* And the job of a cook, who works for a catering company hired to provide catering to an oil platform's workers, is different from the case at hand. Here, Helix hires out laborers such as Skipper to do the actual work of A&M—servicing

---

[22] Skipper's citation for this language is *Mathis v. Union Exploration Partners, Ltd.*, No. 90-2009, 1991 WL 42570 (E.D. La. Mar. 26, 1991). But the relevant language is absent from that case, which does not analyze this factor in depth. The Court therefore focuses its analysis on *Rollans*.

13

and repairing boats—not to do a task ancillary to that, such as cooking, which is not A&M's work.

Skipper also cites to *Boston Old Colony Insurance. Co. v. Tiner Associates, Inc.*, 288 F.3d 222 (5th Cir. 2002). But that case states only that under Louisiana law, where a general employer's business is hiring out its employees and it retains control of the employee at the time of the negligence, it remains liable for the torts of those borrowed employees. *Id.* at 229 (citing *Morgan v. ABC Mfr.*, 710 So. 2d 1077 (La. 1998)). It does not speak to whose work is being performed. The Court therefore finds that this factor, too, weighs in favor of borrowed servant status.

   3. *Agreement*

The agreement between A&M and Helix states that Helix's employees, including Skipper, "shall at all times be deemed an independent contractor and the relationship of these parties to Client shall not at any time constitute any relationship other than that of an independent contractor."[23] The Court finds this factor weighs against the finding of a borrowed servant relationship.

Skipper argues that the existence of this clause necessarily creates a material issue of fact, and the partial summary judgment must be denied.

---

[23] Partial Motion for Summary Judgment Exhibit 1 at 1.

But there are no facts in dispute here—all parties agree on the language of the contract and that it was binding. And courts have found borrowed servant status notwithstanding the existence of such a clause. *See, e.g.*, *Gaudet v. Exxon Corp.*, 562 F.2d 351, 358 (5th Cir. 1977) (finding a borrowed servant relationship when other factors other than agreement weighed heavily in favor of finding the employee was a borrowed servant); *Crawford v. BP Corp., N.A.*, 2015 A.M.C. 1119 (E.D. La. 2015) (finding the parties' performance had modified the contract so that the independent contractor clause was not dispositive). The Court therefore finds that although this factor weighs in plaintiff's favor, it does not require the Court to forgo granting the motion for partial summary judgment.

4. *Did the Employee Acquiesce?*

There is every indication that Skipper acquiesced to the work arrangement with A&M. He knew he would be working for A&M, and there is no evidence he took issue with working for that company. Skipper took instructions from Mayon seemingly without issue[24] and viewed A&M as "the boss."[25] Indeed, Skipper does not present any argument with respect to this

---

[24] Opposition Exhibit 1 at 22:6-14.
[25] Partial Motion for Summary Judgment Exhibit 4 at 89:9-13.

factor. The Court therefore finds this factor weighs in favor of finding a borrowed servant relationship.

### 5. *Did the Original Employer Terminate its Relationship?*

As both parties recognize, this factor asks not whether Skipper's relationship with Helix was severed, but whether he maintained contact with Helix, and whether he was supervised exclusively by A&M. *See Hotard v. Devon Energy Prod. Co. L.P.*, 308 Fed. App'x 739, 742 (5th Cir. 2009). Although Skipper avers that there is no evidence that he lacked communication with Helix or that he was supervised solely by A&M employees, he offers no evidence to suggest he communicated with Helix or was otherwise supervised by Helix employees. And the evidence refutes Skipper's position. Skipper testified that there were no Helix supervisors at the job site.[26] And, as discussed above, Skipper was taking directions exclusively from A&M foremen.[27] The Court therefore finds that this factor weighs in favor of borrowed servant status.

### 6. *Tools and Place*

Although Helix did provide some personal protection equipment, the primary tools used to be complete the work of cleaning the barge were

---

[26] Partial Motion for Summary Judgment Exhibit 4 at 89:2-7.
[27] *See, e.g.*, *id.* at 89:9-13.

provided by A&M.[28] This includes the vacuum that Skipper was directed to use.[29] All of the relevant work was to take place on the Chasman Equipment barge, which A&M dockside was hired to clean.[30] Skipper presents no argument that this factor weighs against finding he was a borrowed servant. The Court therefore finds this factor weighs in favor of finding a borrowed servant relationship.

### 7. *Length of Time*

It is undisputed that Skipper worked for A&M for only six days, and that the job at issue was to last only two weeks. This is a brief period of time and cannot weigh in favor of finding a borrowed servant relationship. But it also does not weigh *against* finding a borrowed servant relationship. Caselaw in the Fifth Circuit states that this factor is "significant only when the special employer employs the employee for a considerable length of time." *See Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 618 (5th Cir. 1986). But when an employee is injured early in his employment, the factor is neutral. *Id.* Indeed, the Fifth Circuit has found this factor neutral even when an employee worked for a borrowing employer for as long as a month. *See Brown v. Union Oil Co. of California*, 984 F.2d 674, 679 (5th Cir. 1993).

---

[28] *See* Partial Motion for Summary Judgment Exhibit 2 at 47:18-48:8.
[29] *Id.*
[30] *Id.* at 45:21-46:18.

17

The Court therefore finds this factor neutral. Even were the Court to find that the short duration of Skipper's employment with A&M weighed against finding a borrowed servant relationship, the Court would still find that a borrowed servant relationship exists because of the number of the other factors that weigh heavily in favor of finding Skipper was a borrowed servant.

### 8. *Right to Discharge*

The inquiry under this factor is not which entity had the power to terminate the injured plaintiff's employment outright, but whether the borrowing employer had the authority to terminate the employee's services with the borrowing employer itself. *See Melancon*, 834 F.2d at 1246. Mayon testified that A&M had the right to fire Mr. Skipper and ask Helix to replace him with another employee, and could have "rejected Mr. Skipper as a temporary worker if they wanted to."[31] Skipper presents no argument that this factor weights against a finding of borrowed servant status. The Court therefore finds that this factor weighs in favor of finding borrowed servant status.

### 9. *Obligation to Pay*

The final factor asks who had the obligation to pay Skipper. Plaintiff points out that the contract between A&M and Helix required Helix to pay

---

[31] Partial Motion for Summary Judgment Exhibit 2 at 50:19-23.

Skipper's wages.[32] But this does not end the inquiry. When the funds the general employer uses to pay the employee are received from entity the employee is contracted out to, that entity in effect pays the employee. *See Capps*, 784 F.2d at 618. That is the case here. Mayon testified that A&M paid Helix, which in turn paid Skipper.[33] Skipper does not dispute this arrangement. The Court therefore finds this factor weighs in favor of borrowed servant status.

  10.  *Conclusion*

In sum, seven of the nine borrowed servant factors favor a borrowed servant relationship, while only one suggests that a borrowed servant relationship does not exist. One factor is neutral. Notably, the fourth, fifth, and sixth factors—three of the four factors the Court must weigh most heavily—favor a borrowed servant relationship. Accordingly, the Court finds that A&M was Skipper's borrowing employer for the purposes of the LHWCA, and that therefore A&M and Helix are entitled to partial summary judgment.

---

[32]  Partial Motion for Summary Judgment Exhibit 1 at 1 (requiring the contractor, Helix, to "[A]ssume responsibility for the payment of wages to each employee furnished to Client [A&M] hereunder.").
[33]  Partial Motion for Summary Judgment Exhibit 2 at 51:6-10.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' motion for partial summary judgment.

New Orleans, Louisiana, this __2nd__ day of January, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE